IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRADLEY G. WHITE,     a/k/a Gunnar Arinnson     Petitioner/Defendant,   v.   UNITED STATES OF AMERICA,     Respondent/Plaintiff. | ) ) ) ) ) ) ) ) ) ) )     Civil No. 05-CV-4167-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Bradley G. White's motion to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1). The government has responded to White's motion. (Doc. 6). For the following reasons White's § 2255 motion will be **DENIED**.

**BACKGROUND**

A jury found White guilty of maintaining a place to manufacture drugs, 21 U.S.C. § 856(a)(1), attempting to manufacture more than 50 grams of a mixture or substance containing methamphetamine, 21 U.S.C. 841(a)(1), 846, and possession of a firearm by a felon, 18 U.S.C. § 992(g)(1). The Court initially sentenced White to 135 months' imprisonment on each count. The Seventh Circuit Court of Appeals vacated White's 135-month sentence on the firearm conviction and remanded to this Court for resentencing. After receiving the Seventh Circuit's mandate, the Court sentenced White to concurrent sentences of 120 months on the firearm charge and 108 months on the other two charges. White did not appeal a second time.

White raises five grounds in support of § 2255, which are all at least partially based on ineffective assistance of counsel. First, he claims counsel for the government, Robert Simpkins,

1

committed prejudicial misconduct by asking him whether the government's witnesses were liars. He contends his attorney, John Delaney, should have objected to Simpkins's questions. Second, White claims Simpkins improperly commented on his failure to call witnesses to disprove the government's case. White argues that Delaney's failure to object to these questions was constitutionally ineffective assistance. Third, White contends that Delaney failed to file a notice of appeal as he requested. Fourth, White maintains that Delaney erred when he questioned him on the stand about his prior convictions after stipulating to his status as a convicted felon before trial. He also thinks Delaney should have objected when Simpkins addressed these convictions on cross-examination. Finally, White claims Delaney should have objected to the introduction of evidence resulting from the execution of a search warrant he believes was unconstitutional.

## **ANALYSIS**

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. "Habeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations[,]" *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996), and is available only if an error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (internal quotation marks omitted).

To succeed on his ineffective assistance claims, White must show that his counsel's performance "fell below an objective level of reasonableness" and that his error(s) prejudiced the outcome of the proceedings. *United States v. Allender*, 62 F.3d 909, 913 (7th Cir. 1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). White bears the "heavy burden" of showing that counsel's performance fell well outside the range of professionally competent representation.

*United States v. Moya-Gomez*, 860 F.2d 706, 763 (7th Cir. 1998).  In determining whether counsel's performance was unreasonable, this Court must defer to his decisions and entertain a presumption that he acted reasonably.  *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997).  It must look at his actions "in the context of the case as a whole, viewed at the time of the conduct, and [entertain] a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies."  *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001) (internal citations and quotation marks omitted).  It is not the Court's place to "second guess [counsel's] strategic choices." *Williams*, 106 F.3d at 1367.

To demonstrate the requisite prejudice, White must show with a "reasonable probability" that without counsel's error the result of the proceeding would have been different and that the error made the proceeding unfair or unreliable.  *Valenzuela*, 261 F.3d at 699.  A reasonable probability "is a probability sufficient to undermine confidence in the outcome."  *Emezuo v. United States*, 357 F.3d 703, 708 (7th Cir. 2004) (quoting *Strickland*, 466 U.S. at 694).[1]

**I.      Failure to File Notice of Appeal**

On February 23, 2007, the Court held an evidentiary hearing on the issue of whether White timely requested Delaney to file a notice of appeal.  At the hearing, the Court heard testimony from both White and Delaney.  Delaney's testimony was credible and White's was not.  For this reason, the Court found that White did not ask Delaney to file a notice of appeal.[2]

---

[1] The Court need not evaluate both prongs of the *Strickland* test; "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 697).

[2] At the close of the hearing, the Court gave White 30 days to reply to the government's response to his motion.  White has not availed himself of this opportunity.

**II.     Prosecutorial Misconduct: Questions as to the Credibility of Witnesses**

Courts use a two-step inquiry when evaluating claims for prosecutorial misconduct. First, they determine whether the comments, viewed in isolation, were improper. *United States v. McKee*, 389 F.3d 697, 699 (7th Cir. 2004). If the remarks were improper, courts "consider whether the statements taken in the context of the entire record deprived the defendant of a fair trial. In other words, [they] ask whether the misconduct caused the jury to reach a verdict of guilty when otherwise it would have reached a verdict of not guilty." *Id*. (internal citations and quotation marks omitted); *see also United States v. Morgan*, 113 F.3d 85, 89 (7th Cir. 1997). In making this determination, this Court must consider:

> the nature and seriousness of the statement; whether the statement was invited by the conduct of defense counsel; whether [it] sufficiently instructed the jury to disregard such statements; whether the defense could counter the improper statement through rebuttal; and finally, whether the weight of the evidence was against the defendant.

*United States v. Severson*, 3 F.3d 1005, 1014 (7th Cir. 1993). The Court must place "considerable emphasis on (1) the curative effect of jury instructions, including the trial court's direct admonition that the arguments of the attorneys are not to be considered evidence, and (2) the weight of the evidence of guilt contained in the entire record." *McKee*, 389 F.3d at 699.

White chose to testify on his own behalf at trial. On cross-examination, Simpkins asked him the following questions:

> Q.     You sat here and you listened to everything that Angie Pheiffer said on the witness stand. She came in and she swore under oath. No promises made to her, nothing. It's your testimony that everything she testified to is not true?
>
> A.     Yes.
>
> . . .

> Q. You heard Peggy Moritz come in hear and testify under oath. . . . And everything she said was not the truth?
>
> . . .
>
> Q. So [James Heath] comes in here. . . . He says about you giving him drugs and everything and making meth . . . . He's lying about all of that?
>
> A. Yes.
>
> Q. Okay. Crystal Vincent, 16 years old, testified that when she was in the ninth grade she started buying meth off of you. . . . She testifies that you sell her meth. That's all a big lie?
>
> A. I've never sold Crystal Vincent meth, ever.

(Doc. 6, Ex. F at 19-20).

The government does not dispute the impropriety of Simpkins's questions. *See United States v. Freitag*, 230 F.3d 1019, 1024 (7th Cir. 2000). As such, the Court need only inquire whether they deprived White of a fair trial. At trial, the evidence of White's guilt was overwhelming. When officers executed a search warrant at White's house,[3] they found a clandestine meth lab, a seed jar[4], 31.4 grams of ground-up pseudoephedrine, 1.1 grams of methamphetamine powder, a filter that contained .7 grams of meth powder, seven firearms and ammunition. Angela Pheiffer, White's former girlfriend, testified that she was present when White learned how to manufacture meth. She told the jury she often saw him bring seed jars into the house and that he "constantly" sold meth

---

[3] Officers executed the warrant at 102 West Main Street, Janesville, Illinois. At trial, White admitted he owned the home, but claimed he rented it to others. The jury clearly found that White resided at this house and the evidence on this point was conclusive.

[4] As Inspector Graves (the officer in charge of the team executing the warrant) explained at trial, seed jar is a slang term used by meth cooks to describe a container that contains meth ingredients mixed with a solvent. One or more steps are necessary to convert the contents of the seed jar to a form that an individual can ingest. (Trial Tr. at 96-97).

from his house. (Doc. 6, Ex. A). She testified that White owned guns, shot them often, and sometimes traded them for meth. (Trial Tr. 210-12).

Peggy Moritz testified that she bought meth from White and smoked meth with him at his house. (Doc. 6, Ex. B). She estimated she spent between $5,000.00 and $10,000.00 on her purchases of meth from White. (*Id.*). She also testified that she saw four or five guns in White's house. (Trial Tr. 250). Crystal Vincent testified that she bought meth from White several times. (Doc. 6, Ex. C). James Heath, a man who sometimes worked for White, testified that he saw White sell meth at least 100 times. He also told the jury that White paid him for his work in meth. (*Id.*). William Price testified that he purchased meth from White many times – sometimes as often as twice a day. (Doc. 6, Ex. E). Price also testified that White put a pistol to his head to make him aware of the consequences of "snitching" to the police. (*Id.*). To make his point, White fired several shots into his wall.

Prior to closing arguments, the Court instructed the jury as follows: "questions and objections by the lawyers are not evidence," "the lawyers' statements to you are not evidence," and "you are to decide whether the testimony of each of the witnesses is truthful and accurate." (Doc. 6, Ex. G at 2-3). In *United States v. McKee*, the prosecutor asked the defendant whether he thought the government's witnesses were liars. *McKee*, 389 F.3d at 699. There, as here, it was beyond dispute that the questions were improper. Even so, the Court held that the district court's jury instructions (substantially similar to those given to the jury in this case) and the overwhelming evidence of the defendant's guilt at trial kept the prosecutor's comments from depriving the defendant of a fair trial. *Id.* at 700. *McKee* strongly cuts in favor of the rejection of White's claim.

White and Delaney did not invite Simpkins's questions in the traditional sense. S*ee, e.g., Severson*, 3 F.3d at 1014-15. But, in as clear a manner as is possible, White's testimony made it impossible for the jury to believe White if they believed even one of the government's witnesses. After hearing about the products of the search warrant and from a number of witnesses who bought meth from him and smoked meth with him, the jury heard Delaney and White engage in the following colloquy:

> Q. Have you ever used methamphetamine?
>
> A. No.
>
> Q. Have you ever made methamphetamine?
>
> A. No.
>
> Q. Have you ever purchased ephedrine or pseudoephedrine to make methamphetamine?
>
> A. No.
>
> . . . .
>
> Q. Do you know how to make methamphetamine?
>
> A. No.

(Doc. 6 Ex. F. at 7).

If the jury chose to believe White, they would necessarily have to conclude that the government's witnesses *entirely* fabricated their testimony. This, of course, was Simpkins's point. But making it this way was unnecessary – any jury would have realized the choice put to it. That the point was so obvious removes some of the sting from Simpkins's misconduct.

The last major consideration for the Court is whether counsel could counter the improper statements through rebuttal. Given the nature Simpkins's questions, rebuttal probably could not

have countered their effect. On redirect examination, Delaney asked White whether the witnesses against him were addicted to meth. White answered that they were, but this likely had no effect.

After reviewing the record in this case and the arguments of the parties, the Court finds nothing to suggest that the jury would have decided differently if Simpkins had not asked the questions he did. Considering all the factors set forth in *Morgan*, and giving special consideration to the curative effect of this Court's jury instructions and the overwhelming evidence of White's guilt, the Court finds that Simpkins's statements did not deprive White of a fair trial. For the same reasons, White has failed to meet the prejudice prong of the *Strickland* test.

**III.   Improper Questioning of White During Cross Examination**

Whether White actually resided in the house at 102 West Main Street, Janesville, Illinois was a significant issue at trial.[5] During cross-examination, Simpkins asked White why a summons to appear in Coles County Court was in the house if he did not live there. White responded, "I put it down there." (Doc. 6, Ex. F at 21). When Simpkins asked White why his mail from the Secretary of State was in the house, White explained that he used the house for storage. When Simpkins asked why he kept his safe-deposit box keys in a house he did not live in, White explained that he had another set in another house. (Doc. 6, Ex. F. at 27). Counsel replied, "It would have been nice if you would have brought them to court to show the jury." (*Id.*). Delaney did not object to this statement. A few minutes later, Simpkins asked, "Getting back to your sister, the one person in your family that can know for sure exactly where you live besides you, she's not here today to testify; is that correct?" (*Id.* at 29). Before White could answer, this Court sustained Delaney's objection. White claims that it was improper for Simpkins to question his failure to call his sister and to

---

[5] White admitted he owned the house, but claimed he rented it to Pheiffer and Price.

produce his second set of safe-deposit box keys. He claims these questions impermissibly shifted the burden of proof. The government believes Simpkins's questions were appropriate. Even if they were not, it asserts that their prejudicial effect was too slight to give rise to an effective claim under § 2255.

The prosecution has the burden of proof on "every fact necessary to constitute the crime with which [a defendant] is charged." *In re Winshop*, 397 U.S. 358, 364 (1970). A comment on a defendant's failure to call a witness or produce evidence does not shift the burden of proof "unless it taxes the exercise of the defendant's right not to testify." *United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir. 1988). *Id*. When a defendant testifies, the fear is assuaged. *See United States v. Kelly*, 991 F.2d 1308, 1314 (7th Cir. 1993). Because White testified, Simpkins's questions did not shift the burden of proof. *See id*. If there were any doubt on that score, the Court's instructions to the jury were sufficient to remove it.[6] *See, e.g., Kurina v. Thieret*, 853 F.2d 1409, 1417 (7th Cir. 1988).

Other than his burden-shifting claim, White does not really say why he thinks these questions were improper. If a defendant testifies, a prosecutor may impugn the defendant's credibility by commenting on his failure to produce corroborating evidence. *United States v. Boulerice*, 325 F.3d 75, 87 (1st Cir. 2003). In the cases the Court has found addressing a prosecutor's comments about

---

[6] The Court instructed the jury as follows:
> The defendant is presumed to be innocent of the charges. This presumption continues during every stage of the trial and your deliberations on the verdict. It is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty as charged. The government has the burden of proving the guilt of the defendant beyond a reasonable doubt.
> The burden of proof stays with the government throughout the case. The defendant is never required to prove his innocence or to produce any evidence at all.

(Trial Tr. 362).

9

a defendant's failure to produce evidence, the defendant has complained about comments made during closing arguments. *See, e.g., id.*; *United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000). Though this situation is different, this claim fails for the same reasons as his last. Even if Simpkins's questions were improper, their prejudicial effect was tempered by the Court's jury instructions and the overwhelming evidence of White's guilt.[7] As with his last claim, White cannot show the requisite prejudice to succeed on this ineffective assistance claim.

### IV.     Inquiries into White's Prior Convictions

Before trial, the parties stipulated that White was a convicted felon. For reasons unknown, Delaney specifically asked White about his prior convictions on direct examination. White answered his question, and told the jury he had been convicted of "theft and burglary." (Doc. 6, Ex. F at 12). When Delaney asked how old his convictions were, White said it had been more than twenty years since he was convicted. (*Id.*). On cross-examination, Simpkins asked White whether his convictions were more than twenty years old. After White said his conviction was "right at 20" Simpkins stated, "It's 87, and then before '87, that was for what?" (*Id.* at 30). The following colloquy ensued:

> A.     '87.
>
> Q.     Do you remember what the conviction was for?
>
> A.     That's the only conviction I have.
>
> Q.     What was it for?
>
> A.     It was for theft.

---

[7] As relevant here, the Court instructed the jury as follows: "The defendant is never required to prove his innocence or to produce any evidence at all." (Trial Tr. 362).

> Q. Okay. And prior to '87 you had another felony conviction. Do you remember what that was for?
>
> A. That was for theft, also.
>
> Q. Any other convictions for stealing stuff that you can think of?
>
> A. No.

(*Id*. at 30-31). The government claims Simpkins was entitled to question White about his prior convictions after White mistakenly told the jury his convictions were more than twenty years old. As White had two prior convictions, the government claims Simpkins was entitled to point out that he had another conviction when White claimed he had only one.

Delaney's decision to question White about his prior conviction falls within the ambit of reasonable trial strategy. *See United States v. Shukri*, 207 F.3d 412, 419 (7th Cir. 2000). While it is perhaps unusual that Delaney chose to address the prior convictions after stipulating to White's status as a convicted felon, Delaney certainly could have thought that telling the jury that his old convictions were for theft would keep them from thinking he had been convicted of another drug crime. Given the presumption the Court must afford Delaney's choices, the Court declines to find that Delaney's conduct in this regard was unreasonable. Once Delaney brought up the matter, it was certainly appropriate for Simpkins to correct White's misstatement.

**V.     The Search Warrant**

In his final argument, White claims the search warrant that resulted in his arrest on February 8, 2002, was invalid because the affiant failed to allege his belief that probable cause existed and because it only contained conclusory allegations. *See United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002). White claims Delaney was ineffective for failing to object to the introduction of this evidence. Because White did not file a motion to suppress at trial, to succeed on his ineffective

assistance claim he must show that the filing of a motion to suppress would have been successful. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005).

Where, as here, an affidavit is the only evidence upon which a judge issues a warrant, "the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755 (7th Cir. 2003). This Court must give the judge's decision to issue the warrant "considerable weight" and should only overrule that determination when the affidavit, "read as a whole in a realistic and common sense manner, fails to allege specific facts and circumstances to allow the judge to reasonably conclude that the items sought to be seized [were] associated with the crime and located in the place indicated." *Koerth*, 312 F.3d at 866-67. To the extent the affidavit was supported by an informant's tip, the Court's inquiry

> encompasses several factors, including: (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant.

*Koerth*, 312 F.3d at 866.

Inspector Graves submitted the affidavit in support of the warrant. The affidavit contained the following information: White was a convicted felon: the Cumberland County Sheriff's Department received anonymous calls (on April 7, 2000, October 2, 2000 and February 9, 2001) indicating that White was making meth at this residence; Tom Graham told an inspector on March 14, 2001, that Brad White was selling meth; on August 8, 2001, Harold Higgins told an inspector that White was selling and making meth from his house; on December 4, 2001, Pheiffer, in a telephone interview with Graves, said she had seen White with pistols, had seen White threaten Price with a pistol in August 2001, and that White told her he "could make as much as $5,000.00 a week

selling meth," (Doc. 1 at 17); Melba Price told an inspector, by telephone on January 15, 2001, that White was selling meth to her daughter, that he possessed stolen guns and that he was using the mobile home behind his house as a meth lab; White was arrested by Coles County Sheriff's Department for the possession of chemicals to make methamphetamine on January 15, 2002; and on February 7, 2002, a confidential source working for the Coles County Sheriff's Department, who had been reliable in the past, entered his house and observed five different handguns. Based on this affidavit, the judge issued a search warrant.

Aside from White's arrest in January 2002, the affidavit was based entirely on information from informants. The most important information, of course, is that of the confidential source who observed five handguns in the house the day before the warrant application. In his affidavit, Graves attested that the source had been reliable in the past, but did not provide any facts supporting that proposition. Without factual support for this assessment, the Court must treat this information as obtained from an informant of unknown reliability. *Koerth*, 312 F.3d at 867; *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999). The source's information was undeniably fresh and based on his first-hand observation, which supports a finding of the informant's reliability. *United States v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir. 1995). On the other hand, the informant provided little detail about the guns – other than that they were handguns – and did not say where the guns were in the house. This undercuts the reliability of the informant's account. *Peck*, 317 F.3d at 756-57. The source's account was, however, bolstered by the other information in the affidavit.

When an informant gives his name, he has an incentive to give truthful information, for the issuing magistrate or the police can hold him to account for providing false information. *Koerth*, 312 F.3d at 871. Harold Higgins and Melba Price gave their names, but their information was stale;

13

Pheiffer also gave her name, but her information was somewhat stale as well. Despite its age, Price and Pheiffer's information is still entitled to some weight because a gun is less likely than drugs or cash to be disposed of during the interim. *United States v. Harju*, 466 F.3d 602, 608 (7th Cir. 2006); *see also United States v. Pless*, 982 F.2d 1118, 1125 (7th Cir. 1992).

Much of the information about the drugs was also stale. It is still relevant, however, because much of it shows that White was engaged in "ongoing continuous criminal activity." *Pless*, 982 F.2d at 1126 ( "[T]he passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity."). Graves's affidavit contained a number of indications that White was in the meth manufacturing business. While the anonymous tips going back to April 7, 2000 mean very little in themselves, when combined with Higgins, Melba Price, and Pheiffer's information and White's arrest for possessing meth making chemicals, they support the magistrate's conclusion. *Id*. Considering the amount of corroborating evidence before the judge, the Court finds that the warrant was supported by probable cause. *See United States v. Spry*, 190 F.3d 829, 836 (7th Cir. 1999); *United States v. Olson*, 408 F.3d 366, 371-72 (7th Cir. 2005).

Even if the Court's determination as to the existence of probable cause is incorrect, the evidence introduced at trial as a result of the warrant was admissible under the good faith doctrine of *United States v. Leon*, 468 U.S. 897, 923 (1984). Under *Leon*, the "fruits of a search pursuant to a warrant should not be suppressed unless the officers who conducted it could not reasonably have believed that the warrant was supported by probable cause." *Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004). Once the government proves that the officer obtained the warrant in good faith, courts will admit the evidence obtained pursuant to an invalid warrant unless

> (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented

14

      in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably
      well-trained officer would have known that his affidavit failed to establish probable
      cause and that he should not have applied for the warrant.

*Harju*, 466 F.3d at 607 (internal quotation marks omitted). Courts will also suppress evidence where the magistrate abandoned his detached and neutral role. *Pless*, 982 F.2d at 1118.

      Here, Graves's decision to seek a warrant is prima facie evidence of his good faith. *Harju*, 466 F.3d at 607. White does not claim, and there is no evidence that, the issuing judge abandoned his neutral role. Furthermore, White has not cited, and the Court's research has not disclosed, a case where a Court failed to find probable cause in a situation similar to the instant case. Considering the affidavit as a whole, the Court finds that a reasonable officer would not be on notice that the affidavit was plainly deficient. As such, White's Fourth Amendment rights were not violated and a motion to suppress would have been unsuccessful. Delaney was not ineffective for failing to object to the admission of the evidence.

## CONCLUSION

      White's § 2255 motion (Doc. 1) is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

    **IT IS SO ORDERED.**

    **DATED: April 3, 2007**

                                           s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **United States District Judge**